CHASEZ, Judge.
Defendant appeals from a judgment ■ enjoining it permanently from constructing any building other than a single family dwelling, and particularly from constructing a church or Kingdom Hall, on Lot 2 of Square 17 of Pines Village Subdivision, New Orleans, and from using the lot for any non-residential purpose, and manda-torily enjoining defendant to remove such portions of the church building as have already been placed thereupon.
The Pines Village Subdivision as originally laid out by plot of October 2, 1950, consisted of a whole Section of land divided into twenty-three lots of irregular shapes. Blanket restrictions were placed upon the land by the subdivider by recorded acts of December 15 and 16, 1950, by which all squares except square 11 (reserved for commercial use) and squares 20 and 23 (reserved tentatively for park and recreational purposes) were subjected to the following restrictions, among others:
“No lot shall be used except for residential purposes. No building shall be erected, altered, placed, or permitted to remain on any lot other than one detached single-family dwelling not to exceed two and one-half stories in height and a private garage for not more than two cars.
* * * * *
“ * * * In any event no building shall be located on any lot nearer than 25 feet to the front lot line, or nearer than 10 feet to any side street line. No building shall be located nearer than 5 feet to an interior lot line. * * * ”
Thereafter, in 1955, the subdivider procured approval by the City Planning and Zoning Commission for a revision of the plot which relocated certain street areas and combined all of original squares 19 and 20 and about half of squares 22 and 23, together with formerly intervening street areas and small parts of other squares, into one large area measuring about 570 feet by 1215 feet, divided into three roughly equal parts designated proposed public school, proposed playground, and proposed Catholic church and school.
*312 A Catholic congregation acquired the part designated Catholic church and school, which had been part of squares 19 and 20, during 1956; and it thereafter procured written consent from every one of the hundreds of landowners in the subdivision, agreeing to an amendment of the overall restriction plan so as to exclude original squares 19 and 20 from the residential restrictions in order to enable the use of the land for, and the erection of, a Catholic church and school. The Orleans Parish School Board had meanwhile acquired the public school part of the large resubdivided area, and it and the Catholic congregation mutually agreed to the amendment of the restrictions to permit both the public and the Catholic facilities, which were shortly thereafter constructed and put into use.
Several years thereafter, on September 7, 1962, appellant acquired one of the several hundred residential lots in the subdivision, with full knowledge of the restrictions, and thereupon undertook to construct a church or Kingdom Hall of Jehovah’s Witnesses. Parts of the construction were situated within 25 feet of the front property line and within 5 feet of the side property line.
This injunction suit by several nearby property owners resulted in December, 1962.
After trial on the merits, judgment was rendered herein in favor of the plaintiffs, Otis R. Willis, Mr. and Mrs. Oscar A. Carlson, Jr.,, Mr. and Mrs. Harold Leo Giese, Miss Elaine Harriet Carlson, and Mr. and Mrs. Warren W. Schaefer, and against the defendant, The New Orleans East Unit of Jehovah’s Witnesses, Inc., granting a permanent injunction in favor of said plaintiffs and against said defendant forever enjoining, restraining and prohibiting the said defendant, its agents, employees, and all other persons, firms or corporations acting or claiming to act in its behalf, from erecting on attempting to erect on Lot #2 of Square No. 17 of the Pines Subdivision, or using or attempting to use any building on said lot, for any purposes other than one detached single family dwelling to be used for residential purposes only, and specifically from erecting a Kingdom Hall of Jehovah’s Witnesses to be used for Church purposes on said lot, and ordering the removal or demolition of any structure or portion of same heretofore erected on said lot for use as a church. A motion for a new trial filed by defendant was denied by the court and, as above indicated, the defendant has appealed suspensively and devolutively.
Appellant does not dispute the original effectiveness of the quoted restrictions, nor that they in terms prevent the building of a church on its property. “The courts appear in complete accord that the erection of a church will violate a covenant restricting the use of property to residential purposes.” 13 A.L.R.2d 1239 and authorities there cited. Appellant claims that the restrictions have been waived by all interested parties, insofar as they prevent church use and construction, by the amendment of the restrictions to permit the Catholic church and school. And,, he argues, the setback provisions apply only to residences, not to churches.
The amendment of the restrictions was by its terms limited to two squares, and did not constitute a general waiver which would permit churches on every lot in the whole subdivision. Had the subdivider himself originally set aside the two squares (or the whole large area) for church and school purposes, the same situation would have existed. The only pertinent requirement our law has established for the enforceability of subdivision restrictions is that a general plan must be maintained; and only where the object of the plan is “substantially defeated” by failure bo impose or maintain the restrictions on a substantial portion of the lots, scattered throughout the subdivision, have the restrictions been held unenforceable; Edwards v. Wiseman, 198 La. 382, 3 So.2d 661 (1941); In re Congregation of St. Rita Roman Catholic Church, 130 So.2d 425 (La.App.1961). *313 Expert testimony in this case is, and the plot of the subdivision itself shows, that the use of the large consolidated area for schools, church and playground has not destroyed the uniformly residential character of the great bulk of the subdivision. The undisputed original enforceability of the restrictions therefore remains unaffected.
Appellant further contends that the consent of the City Planning Commission and the Parish School Board constitutes a governmental preference of one religion, proscribed by La.Const. Art. 1, Sec. 4, LSA, and a denial to appellant of freedom of religion and of equal protection of the law, in violation of U.S.Const. Amend. 1 and XIV. Until appellant shows that the governmental agencies are withholding their consent to appellant’s building its church, after all landowners have agreed to its construction the time for considering this argument will not have arrived.
Appellant also insists that the individual plaintiffs are arbitrarily discriminating against Jehovah’s Witnesses by objecting to their church after a Catholic church was allowed, and that since their reason for enforcing the restrictions is arbitrary they cannot be allowed to enforce the restrictions. It is immaterial, of course, whether plaintiffs are prejudiced and whether their prejudice prompts them to exercise their rights; but the record contains not a scintilla of evidence to suggest religious intolerance on the part of plaintiffs. Their un-contradicted testimony, the only evidence on this point, is that they would object to any church of any denomination being built in the exclusively residential area of their subdivision. Appellant shows neither reason nor precedent to deprive plaintiffs of their property right to enforcement of the restrictions, even assuming plaintiffs (of differing religious faiths) were motivated by prejudice.
The injunction was properly issued, the judgment in favor of the plaintiffs, Otis R. Willis, Mr. and Mrs. Oscar A. Carlson, Jr., Mr. and Mrs. Harold Leo Giese, Miss Elaine Harriet Carlson, and Mr. and Mrs. Warren W. Schaefer, and against the defendant, The New Orleans East Unit of Jehovah’s Witnesses, Inc., is therefore affirmed at appellant’s cost.
Affirmed.