524 So.2d 126 (1988)
LAKESHORE PROPERTY OWNERS ASSOCIATION, INC.
v.
Walden J. DELATTE.
No. CA-7729.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
*128 Victoria Lennox Bartels, Wessel, Bartels & Ciaccio, New Orleans, for plaintiff.
Anthony S. Taormina, Metairie, for defendant.
Before SCHOTT, BARRY and BYRNES, JJ.
BARRY, Judge.
Walden Delatte appeals a judgment which permanently enjoins him from increasing the total area of his residence and carport beyond 2,310 square feet in violation of restrictive title covenants.
In April, 1984, without prior Orleans Parish Levee Board approval, Delatte obtained a city permit to tear down a carport and build a garage on property he purchased in 1955. Apparently the City screened the application for zoning problems, but not for violations of title restrictions. After a complaint was lodged by Mrs. Lucas, president of the Lakeshore Property Owners Association, the City cancelled its permit (more than a year later) and Delatte was notified by the Levee Board that it must approve his plans before he can obtain a permit.
Meanwhile, Delatte had laid a concrete slab two feet from the property line in order to prevent water from running onto his neighbor's yard. This required a variance, but his application to the Levee Board was denied. He was told a permit to build on the property line would be approved. In July, 1986, without submitting amended plans to the Levee Board, Delatte obtained another city permit. The record contains an affidavit of Michael Centineo, Assistant Chief Building Inspector, which states that before 1977 the city did not require Levee Board approval, but after 1977 the city had no uniform policy. Mr. Centineo declared that since July, 1986 the City no longer requires Levee Board approval of building plans pertaining to Lakeshore Subdivision.
On September 5, 1986 the Lakeshore Property Owners Association [Association] filed a petition for mandatory and injunctive relief against Delatte because the garage allegedly violated Section II and Section VI of his recorded title restrictions.
Delatte filed an answer and reconventional demand against the Association and Mrs. Lucas, individually, alleging past discriminatory enforcement of the restrictions. His exceptions of prescription, no cause and/or no right of action and res judicata were overruled. The court issued *129 a permanent injunction and dismissed the reconventional demand.
Delatte specifies five errors: (1) the restrictions are not applicable because of liberative prescription; (2) admission of his plot plan from a prior application to the Department of Safety and Permits is hearsay; (3) the trial court failed to consider the evidence and Civil District Court judgment in Lakeshore Property Owners' Association v. Gerrets; (4) the restrictive covenants have been abandoned; (5) defense counsel was frequently interrupted and thus effectively prevented from presenting his case.
Building restrictions, charges imposed by the owner of an immovable pursuant to a general plan governing building standards, specified uses and improvements, are sui generis real rights. La.C.C. Art. 775 (1978); Comments (c) and (d) to Article 775. See also Yiannopoulos, Civil Law Treatise, VOL. 2, § 161 (1980).
Restrictive covenants are strictly construed against the grantor and liberally in favor of the grantee. All doubt is resolved in favor of the free and unrestricted use of property and against restricted use. Camelot Citizens Association v. Stevens, 329 So.2d 847 (La.App. 1st Cir.1976), writ denied 333 So.2d 242 (La.1976); Fuller v. Hill Properties, Inc., 259 So.2d 398 (La. App. 2d Cir.1972).
Title restrictions may be enforced by mandatory and prohibitory injunctions. LeBlanc v. Terrebone, 432 So.2d 980 (La. App. 1st Cir.1983); Camelot Citizens Association v. Stevens, supra. Pursuant to La.C.C. Art. 779 (1978) the restrictions may be enforced without regard to the limitations of C.C.P. Art. 3601, which ordinarily requires a showing of irreparable injury before an injunction will issue. Vienna Bend Subdivision Homeowners Association v. Manning, 459 So.2d 1345 (La.App. 3rd Cir.1984); Chapman v. Fisher, 370 So. 2d 162 (La.App. 3rd Cir.1979). A plaintiff seeking an injunction must establish a violation of a restriction and then the burden shifts to the defendant to prove termination or abandonment of that restriction. Cabibi v. Jones, 391 So.2d 461 (La.App. 4th Cir.1980). See also La.C.C. Arts. 780-782.
Building restrictions applicable to Lakeshore Subdivision were recorded in 1951 by the owner/developer of the subdivision, the Orleans Parish Levee Board. Section II of the restrictions applies to all squares in Lakeshore Subdivision ("bounded by Lake Pontchartrain on the north, Orleans Canal on the east, Robert E. Lee Boulevard on the south and New Basin Canal on the west") and provides in pertinent part:
APPROVAL OF BUILDING PLANS
Prior to beginning the construction of a residence, garage, fence or other structure, the owner shall submit detailed plans and specifications of the proposed building or structure to the Orleans Levee Board for written approval and no work shall be permitted on the building until such written approval is received and building permit obtained from the City of New Orleans.
Section VI provides:
LOT COVERAGE
No residence shall cover more than thirty per cent (30%) of the total area of the building site. In computing the coverage, the ground floor area of a one story garage, whether attached or detached from dwelling, may be deducted from the building area, but not to exceed two hundred (200) square feet.
Delatte argues that the trial court erred by allowing the Association to place into evidence the plot plan which was attached to his April 18, 1984 application for a building permit. No survey was introduced. The original house plans of Delatte's predecessor in title were admitted, but Connor Bailey, Chief Engineer of the Orleans Levee Board, testified there had been an addition to the rear wall, he did not know the exact dimensions, and without those figures he could not make any calculations. He could not identify the plot plan or sketch as the one submitted to the Levee Board with his application.
On cross-examination Mr. Bailey used the figures on Delatte's plan obtained by the Association's counsel through a subpoena to the City Department of Safety and *130 Permits. He utilized the figure of 2,051 square feet shown on the plan and added 570 feet for the proposed garage, a total of 2,621 square feet, minus 200 feet (Section VI), or a net 2,421 square feet. Under Section VI, 30% of the 7,700 square foot lot (70 feet × 110 feet) permitted 2,310 square feet. Mr. Bailey concluded that the application was 111 square feet over the allowable. During cross-examination Delatte identified his 1984 sketch which had already been admitted and stated the figures were correct. We therefore have no problem with its introduction.
However, the Association's use of the informal sketch to prove a violation does pose problems. In its petition the Association used the 1984 figure of 2,051 square feet for the existing residence, but added the 540 square foot proposed garage from Delatte's sketch on his June 13, 1986 application. Thus, the petition alleges a 71 (it should have been 81) square foot violation. At trial Mr. Bailey used the 1984 sketch with a 570 square foot garage to find a 111 square foot violation. The trial court used 2,310 (30% of the total square footage of 7,700) in the judgment, but the Association concedes in brief 200 feet should be added to allow for a garage.
Despite the confusion, we are satisfied the Association did prove a violation. The burden then shifted to Delatte to prove termination or abandonment of that restriction by a preponderance of the evidence. Delatte's counsel attempted to introduce the entire Civil District Court record in Lakeshore Property Owners Association v. Gerrets (Signorelli), Division "B", No. 604-451 in which judgment was rendered July 28, 1976 against the Association which had attempted to enforce Section VI.
Under La.R.S. 13:3723 during trial of any suit a party may request the introduction of any prior record or document in the district court where the trial is proceeding. Alleman v. Joffrion, 411 So.2d 1142 (La.App. 1st Cir.1982), writ denied 415 So. 2d 945 (La.1982). See also La.C.C.P. Arts. 1391-97; Mattox v. American Indemnity Company, 259 So.2d 79 (La.App. 4th Cir. 1972).
Allegations, admissions or confessions in pleadings in another suit are extrajudicial admissions and are admissible as evidence, but are not conclusive presumptions and do not operate as estoppel unless the party invoking them has been prejudiced by relying upon them. C.C. Art. 1853 (1984) (formerly Art. 2291 (1870)); Twillie v. H.B. Zachry Company, 380 So.2d 747 (La.App. 4th Cir.1980); D'Amico v. Canizaro, 226 So.2d 547 (La.App. 4th Cir.1969), affm'd 256 La. 801, 239 So.2d 339 (1970), quoting from Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122 (1913). See also Financial Corporation v. Estate of Cooley, 447 So.2d 594 (La.App. 3rd Cir. 1984); Carson v. Central Progressive Bank, 432 So.2d 891 (La.App. 1st Cir.1983), writ denied 438 So.2d 578 (La.1983).
Delatte's counsel requested that the Gerrets record be admitted. The Association was certainly aware of Gerrets since it was a litigant. Although Delatte argued that the same issues were present in Gerrets (Section VI restriction and a West Lakeshore property owner) the trial court (understandably confused as to whether a West or East lot was involved in Gerrets) erroneously held the record irrelevant and inadmissible. Delatte proffered the entire record.
This Court has reviewed the Gerrets record except for 15 plaintiffs' exhibits missing from the old record (which contains no transcript since it was not appealed). The Gerrets owned a lot in West Lakeshore Subdivision and their house plans were in violation of Section VI and an ordinance. The plans were changed, the Orleans Levee Board approved, and a building permit was issued. The Gerrets began construction according to the first plan which was 510 square feet in excess of Section VI of the restrictions (11 feet in the length of their carport). The Association sued for an injunction which was denied.
The record contains the 1951 set of building restrictions pertaining to all of Lakeshore (East and West) along with a second set of restrictions registered July 28, 1955 which purportedly covers only East Lakeshore ("bounded by Lake Pontchartrain on *131 the north, Orleans Canal on the east, Robert E. Lee Boulevard on the south and Canal Boulevard on the west"). The second set of restrictions do not contain Section VI and have no maximum coverage provision. The Gerrets argued that the original restrictions were never changed or amended to exclude East Lakeshore pursuant to La.C.C. Art. 780.[1] Two sets of restrictions were of record. The Gerrets noted their carport would not violate East Lakeshore restrictions.
By memorandum the Gerrets argued that hundreds of homes had been built in East Lakeshore under the probably invalid second set of restrictions without reference to a maximum coverage rule. All future construction in Lakeshore Subdivision (except for two vacant lots in the West) would occur without binding property owners to the 30% coverage restriction. They introduced the affidavit of Richard Najolia, an attorney for the Gerrets, who used Levee Board files and randomly sampled ten plans from East Lakeshore and found all in violation of the 30% rule. He was told by a Levee Board engineer that most of the houses in East Lakeshore (not two-story or on corner lots) would exceed 30% coverage. Importantly, counsel for the Gerrets and the Association stipulated that if Orleans Levee Board records had been produced they would show that more than 50% of the more than 300 houses in East Lakeshore Subdivision were built without compliance with the 30% maximum square footage. The stipulation further stated that testimony of Orleans Levee Board officers would affirm that the 30% rule was not applied in East Lakeshore.
The Gerrets also noted three West Lakeshore violations: the Hirt residence at 7540 Canal Blvd. exceeded the allowable square footage by 589.64 square feet; 438 Topaz St. exceeded it by 964.11 square feet; and the Mayer property at 401 Emerald St. exceeded it by 1,689.07 square feet. The Gerrets argued those violations (in excess of their alleged violation) had been allowed without protest by the Association causing Section VI to be constructively abandoned.
In a memo the Association commented on the confusion resulting from two sets of restrictions. It noted the trial court's conclusion that the Levee Board (whether it intended or not) originally covered all the Lakeshore lots and its subsequent attempt to alter by imposing other restrictions (without the 30% rule) on the East half was not legally permissible. Assuming the correctness of that conclusion, the Association argued that all the lots in both East and West would be bound by the original restrictions including Section VI. If that is true, hundreds of houses in East Lakeshore were built in violation.
The court ruled in favor of the Gerrets "insofar as plaintiff's [the Association] suit seeks to enforce Section VI of the title restrictions of Lakeshore Subdivision and to enforce compliance with a plan approved by the Orleans Levee Board."
We find Delatte's attempted use of the Gerrets record was clearly relevant and should have been considered by the trial court since it involved the Association's unsuccessful prior attempt to enforce Section VI against the owner of a West Lakeshore lot.
We agree the affidavit in Gerrets would have been inadmissible as hearsay in the present case since there was no attempt to have Mr. Najolia present for cross-examination. See Stutts v. Humphries, 408 So. 2d 940 (La.App. 2d Cir.1981). However, in Gerrets similar information was introduced by stipulation and should have been admissible here although not as a conclusive *132 presumption. Failure to consider Gerrets constitutes reversible error. The trial court also erred by not allowing any questions or evidence relating to East Lakeshore or the second set of restrictions. Delatte's proffered exhibits of the East Lakeshore map, title restrictions and the Gerrets record were highly relevant to the issue of abandonment.
Building restrictions terminate by abandonment of the whole plan or by a general abandonment of a particular restriction. When a particular restriction is abandoned the affected area is freed of that restriction only. La.C.C. Art. 782.
In deciding whether there has been abandonment, the court must decide what the subdividers intended the scheme or plan to be and then inquire into alleged violations to determine whether the plan has been disrupted. East Parker Properties, Inc. v. Pelican Realty Co., 335 So.2d 466 (La.App. 1st Cir.1976), writ denied 338 So.2d 699 (La.1976).
Whether acquiescence in the violations exist to the extent necessary to find abandonment and a waiver of the restriction depends upon the particular circumstances of each case. The alleged violation in question must be compared to those of similar character, proximity and notoriety. The number and duration of the total violations must be considered. Actual or constructive knowledge of the complaining property owner must be found before abandonment can be declared along with such substantial changes in the intended nature of the subdivision to the point of subverting the original scheme. Allen v. Forbess, 345 So.2d 950 (La.App. 2d Cir. 1977). See also Guyton v. Yancey, 240 La. 794, 125 So.2d 365 (1960).
Abandonment of a particular restriction is predicated on a sufficient number of violations of that restriction in relation to the number of lots affected by it. Where there have been frequent and substantial violations of the restriction without objection, the restriction is regarded as having been abandoned. Yiannopoulos, Real Rights: Limits of Contractual and Testamentary Freedom, 30 LA.L.REV. 44, 72-73 (1969); Edwards v. Wiseman, 198 La. 382, 3 So.2d 661 (1941); East Parker Properties, Inc. v. Pelican Realty Company, supra; Finn v. Murphy, 72 So.2d 358 (La.App.Orl.1954).
We note the Association's knowledge over many years of numerous violations and confusion resulting from two sets of restrictions, its failure to take action to clarify the situation, and continued utilization of Section VI over the eleven year period since the Gerrets judgment which ruled that Section VI was not enforceable. The problem of two sets of building restrictions on Lakeshore Subdivision must be faced and evidence relating to restrictions in East Lakeshore and their violation is relevant and militates toward a finding of abandonment.
There are remaining problems relating to which restrictions apply in Lakeshore Subdivision and whether there has been abandonment of Section VI of the original set of restrictions. We must remand for consideration of all relevant evidence on the issue of abandonment. We pretermit discussion of the remaining specifications of error.
The judgment is reversed and the case remanded for proceedings consistent with this opinion.
REVERSED; REMANDED.
SCHOTT and BYRNES, JJ., concur.
SCHOTT, Judge, concurring:
Defendant had the burden to prove that there had been a general abandonment of the Section VI restriction so as to preclude enforcement by the Association. C.C. art. 782. The stipulation in the Gerrets case was admissible as an extrajudicial confession and the trial court should have received it into evidence and considered it in deciding the case. Twillie v. H.B. Zachary Co., 380 So.2d 747 (La.App. 4th Cir.1980).
I have some difficulty reconciling this conclusion with Guyton v. Yancey, 240 La. 794, 125 So.2d 365 (1960). There, when confronted with the same question as to whether a particular restriction had been *133 abandoned in the subdivision as a whole, the court seemed to hold that evidence of violations in a part of the subdivision which was remote from the area of confrontation was inadmissible. The court seemed to hold that infractions over five hundred feet from plaintiff's home were too remote to be considered. Under this theory defendant's evidence of violations in East Lakeshore would probably be inadmissible. However, in deciding the case the court did consider these "remote" violations anyway and concluded that the restrictions had not been abandoned. For this reason I would regard the court's discussion as dicta which does not require exclusion of the Garrets stipulation. With all due respect for the Guyton opinion it seems quite impractical to say the remoteness goes to admissibility rather than weight. The term "remote" is a relative one. The subdivision in the Guyton case consisted of thirty-four one-half to one and one-half acre lots west of Gilbert Avenue and twelve two to five acre lots east of Gilbert. East and West Lakeshore consist of large but typically city lots. What "remote" means in the Guyton subdivision may be different in Lakeshore. The point is that the evidence has to be admitted in order for the court to determine the remoteness question. Only then can the court determine what weight if any to assign to the evidence in the light of all the circumstances of the case. This seems to be what Justice Mc Caleb was saying in his concurring opinion, and hopefully, we are on solid ground in taking the same approach.
BYRNES, Judge, concurring.
I concur in the decision to remand the case to the district court for consideration of the erroneously excluded stipulation in Gerrets. However, I consider the remainder of the record relevant only insofar as it relates to West Lakeshore. Moreover, I disagree completely with the statement in the opinion that exhibits etc. relating to East Lakeshore were "highly relevant to the issue of abandonment". As the opinion correctly points out, a comparison of violations of a similar character, proximity, and notoriety to the violation under consideration should be made when deciding if a particular restriction has been abandoned. However, given the arguably different restrictions which may apply to East Lakeshore, I am not at all convinced that violations in that part of the subdivision are truly similar in the sense intended by the law on abandonment. This is particularly true in this case where (according to the excluded stipulation in Gerretts) only three homes in West Lakeshore violated the restriction while more then 50% of the East Lakeshore houses were in violation. In my opinion, this factual situation makes information concerning East Lakeshore marginally relevant at best.
Moreover, I find it highly inappropriate to state (as the opinion does) that evidence relating to East Lakeshore restrictions and violations "militate[s] toward a finding of abandonment". That issue is for the trial court to decide on remand. More importantly, I do not think those factors militate toward a finding of abandonment and therefore can not subscribe to this statement.
For these reasons I concur in the remand of the case for further consideration of relevant evidence, but do not agree with the opinion's broad statements regarding the degree of relevancy of the East Lakeshore restrictions, the relevancy of the entire record in Gerretts, or the result toward which the opinion considers that evidence to "militate".
NOTES
[1] La.C.C. Art. 780 provides:

Building restrictions terminate as provided in the act that establishes them. In the absence of such provision, building restrictions may be amended or terminated for the whole or a part of the restricted area by agreement of owners representing more than one-half of the land area affected by the restrictions, excluding streets and street rights-of-way, if the restrictions have been in effect for at least fifteen years, or by agreement of both owners representing two-thirds of the land area affected and two-thirds of the owners of the land affected by the restrictions, excluding streets and street rights-of-way, if the restrictions have been in effect for more than ten years.