871 So.2d 1253 (2004)
TRI-STATE SAND & GRAVEL, L.L.C., Plaintiff-Appellee,
v.
Sharon Procell COX, Defendant-Appellant.
No. 38,217-CA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2004.
Rehearing Denied May 6, 2004.
*1254 Michael David Cox, M.D., for Appellant.
Lemle & Kelleher, L.L.P. by T. Haller Jackson III, Stephen C. Fortson, Shreveport, for Appellee.
Before BROWN, DREW and MOORE, JJ.
DREW, J.
Tri-State Sand & Gravel, L.L.C. ("Tri-State" and the successor company to Tri-State Sand & Gravel, Inc.) is the developer of Lakewood Subdivision in Bossier Parish. Lakewood Subdivision consists of at least six units. Cox is the owner of Lot 239 of Unit 4. Tri-State Sand & Gravel, Inc., filed protective covenants covering Lakewood Unit 4 in the Bossier Parish records on November 16, 1994. The covenants were drafted by Ed Kennon, the manager of Tri-State.
Regarding actions for enforcement, the protective covenants provide in Paragraph 27:
The Architectural Control Committee or the developer in its own right and/or as representative of any owner, or any owner shall have the right to enforce in a Court of Law of competent jurisdiction, by injunctive relief or otherwise, until violation of any restriction, condition, covenant or reservation now or hereafter imposed by the provision of these covenants, or placed of record by Tri-State Sand & Gravel, Inc., affecting lands covered hereby has ceased or been corrected. Any attorney fees incurred by the Architectural Control Committee or the developer or any Owner in the enforcement of these restrictions, condition and covenants shall be paid by the violator thereof. Failure by the Architectural Control Committee or any owner for any period of less than two (2) years to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so hereafter.
Paragraph 1 of the protective covenants states that the Architectural Control Committee ("ACC") is to consist of three members appointed by the directors of Tri-State. Kennon testified that:
 He, his wife, and a Tri-State employee are the ACC members;
 He made the final decisions on matters dealing with the ACC because he believed that he was the more knowledgeable person;
 Tri-State owned property in Unit 4 at the time the action was filed;[1] and
 At the time of the hearing on the exception, Tri-State owned property *1255 in Unit 6, but did not own property in Units 1-5.
On January 9, 2003, Tri-State filed a petition for injunction against Sharon Cox, alleging that Cox's garage does not comply with Paragraph 3 of the covenants in that it can only accommodate one vehicle. Tri-State sought a judgment ordering Cox to modify her garage, subject to plans approved by the ACC, so that it would be in compliance with the covenants.
Cox filed the exception of no right of action alleging that Tri-State was not a proper party plaintiff as it lacked real rights under the covenants, as well as a real and actual interest in this matter, because it no longer owned property in Unit 4. The trial court overruled the exception. Cox appealed, then was ordered by this court to show cause why the appeal should not be dismissed as having been taken from a non-appealable interlocutory judgment. Subsequently, this court elected to convert the appeal to an application for supervisory review and granted a writ of certiorari.

DISCUSSION
An action can be brought only by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. The exception of no right of action tests whether the plaintiff has a real and actual interest in the action. See, La. C.C.P. art. 927. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n, 94-2015 (La.11/30/94), 646 So.2d 885; Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972). The no right of action exception assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. Louisiana Paddlewheels, supra.
The supreme court has provided a detailed overview of the law of building restrictions:
In 1977, the Louisiana Legislature repealed Title V of Book II of the Louisiana Civil Code governing the surveying of lands and the fixing of limits and enacted a new Title V regulating building restrictions. Thus, building restrictions are now defined and governed by Articles 775-783 of the Louisiana Civil Code. These articles generally codified the existing jurisprudence, because prior to 1977 the Code did not specifically deal with building restrictions.
Building restrictions are defined as "charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. The plan must be feasible and capable of being preserved." La. C.C. art. 775. The comments to Article 775 describe building restrictions as "the most important category of restraints on the use or disposition of immovables from the viewpoints of urban and suburban developments in Louisiana." La. C.C. art. 775, comment (d). "The requirements of an ancestor in title and of a general development plan are essential features of building restrictions as sui generis real rights." Id.

Article 777 describes the nature and regulation of building restrictions as follows: "Building restrictions are incorporeal immovables and real rights likened to predial servitudes. They are regulated by application of the rules governing predial servitudes to the extent that their application is compatible with the nature of building restrictions." La. *1256 C.C. art. 777. Although the comments to this article state that the article codified existing jurisprudence, the jurisprudence prior to 1977 had inconsistently treated building restrictions as predial servitudes, real obligations accompanying the land into the hands of the vendee, or covenants or equitable restrictions running with the land.
"Building restrictions may impose on owners of immovables affirmative duties that are reasonable for the maintenance of the general plan." La. C.C. art. 778. One such affirmative duty is the duty to pay assessments. Comment, Some Observations on Building Restrictions, 41 La. L.Rev. 1201, 1208 (1984); Yiannopolis, Predial Servitudes, § 196 at pp. 519-520 (2nd Ed.1997) ("Provisions that each purchaser of a lot in a subdivision shall automatically become a member of a corporation formed to provide maintenance of the common grounds, and that each member shall be subject to an annual assessment, have been enforced as reasonable and necessary.")
"Building restrictions may be enforced by mandatory and prohibitory injunctions without regard to the limitations of Article 3601 of the Code of Civil Procedure." La. C.C. art. 779. An injunctive action may be brought by the original subdivider or by landowners in the subdivision without the necessity of showing the ordinary prerequisites to injunctive relief, i.e., proof of irreparable injury, loss, or damage to the landowner. See Yiannopolis, Predial Servitudes, § 194 at 516-517 (2nd Ed.1997).
This Court has since consistently held that building restrictions "constitute real rights, not personal to the vendor, and inure to the benefit of all other grantees under a general plan of development, and are real rights running with the land; and that the remedy of the other grantees to prevent a violation of the restrictions by another is by injunction." Diefenthal v. Longue Vue Management Corp., 561 So.2d 44, 51 (La.1990); Cashio v. Shoriak, 481 So.2d 1013, 1015 (La.1986); Oakbrook Civic Ass'n, Inc. v. Sonnier, 481 So.2d 1008, 1010 (1986).
Brier Lake v. Jones, 97-2413 (La.4/14/98), 710 So.2d 1054, 1057-8. Footnotes omitted; emphasis added.
Defendant argues that the real rights sought to be enforced by Tri-State are reciprocal predial servitudes. Defendant's assertion is misplaced. Building restrictions are incorporeal immovables and real rights merely likened to predial servitudes. In addition, building restrictions are regulated by applying the rules governing predial servitudes to the extent that these rules are compatible with the nature of building restrictions. See, La. C.C. art. 777. Comment (d) to Article 777 notes that as sui generis real rights "akin" to predial servitudes, building restrictions are regulated by the "general rules applicable to predial servitudes, subject to certain modifications concerning the ... enforcement... of building restrictions."
Unlike predial servitudes, building restrictions may be imposed in the absence of a dominant estate. See, Comment (d) to La. C.C. art. 775. By definition, a predial servitude is a charge on a servient estate for the benefit of a dominant estate. La. C.C. art. 646.
Cox contends that the restrictions can only be enforced by the owners of dominant estates. In Lakeshore Property Owners Ass'n, Inc. v. Delatte, 579 So.2d 1039 (La.App. 4th Cir.1991), writ denied, 586 So.2d 560 (La.1991), the association sought injunctive relief against Delatte for violations of building restrictions. Delatte filed the exception of no right of action. The court of appeal concluded that the *1257 association had the procedural capacity to sue to enforce the subdivision's building restrictions. We note that the association, which presumably did not itself own property in the subdivision, was composed of two types of members: owner members who owned real estate in the subdivision, and "associate members who [were] residents in Lakeshore Subdivision and/or lessees of business establishments in Lakeshore Subdivision who [were] not owners." Id., 579 So.2d at 1044. Obviously, it cannot be said that the association in Delatte was entirely made up of property owners. Thus, the association represented the interests of property owners and non-property owners.
The covenants at issue explicitly provide Tri-State with the right to bring this action either on its own or as representative of a property owner. Moreover, as stated in Brier Lake, supra, injunctive action to enforce a building restriction may be brought by the original subdivider.[2] See also, Comment (d) to La. C.C. art. 779.[3]
Building restrictions are a means of insuring the lasting aesthetic and monetary value of property. 4626 Corp. v. Merriam, 329 So.2d 885 (La.App. 1st Cir.1976), writ refused, 332 So.2d 800 (La.1976). The Lakewood covenants declare that their purpose is to assure that the subdivision will be free of undesirable buildings and activities. Part of the lure of living in a subdivision with restrictive covenants is having peace in the knowledge that one's neighbors will not engage in activity that runs afoul of the restrictions. It also promotes neighborly relations for subdivision residents to be able to rely on a separate entity, in this case the subdivider, to enforce these restrictions. Accordingly, Tri-State has a real and actual interest in this proceeding.
We conclude that the trial court did not err in denying the exception of no right of action.

DECREE
At appellant's cost, the judgment is AFFIRMED.
BROWN, C.J. concurs with written reasons.
BROWN, C.J., Concurring,
Under the circumstances presented, I agree that the developer has a right of action. The covenants provide that the developer, Architectural Control Committee or landowner may enforce the provisions; however, the committee is appointed by the developer and in this case, is the developer. Ninety per cent of the homeowners are required to oust the developer from control of the committee. Even so, the developer still maintains the right to enforce the covenants in its own right. Equity might prevent such control if it is shown that a developer has retained and exercised unreasonable control of the artistic decisions of homeowners long after all the lots have been sold and the developer no longer has any proprietary interest *1258 in the subdivision, particularly if it is shown that the developer was acting contrary to the desires of the homeowners. In this case, Tri-State is continuing to develop other stages of the subdivision and has not acted unreasonably.
APPLICATION FOR REHEARING
Before BROWN, STEWART, PEATROSS, DREW, and MOORE, JJ.
Rehearing denied.
NOTES
[1] Tri-State alleges in brief that it maintains ownership of land in Unit 4 subject to public rights of way. However, evidence of this was not presented at the hearing on the exception.
[2] Brier Lake was legislatively overruled by Act 309 of 1999, which amended La. C.C. arts. 776 and 780 (regarding amendments and termination of building restrictions), and 783 (regarding conflicts with the Louisiana Condominium Act, the Louisiana Timesharing Act, and the Louisiana Homeowners Association Act). Act 309 also enacted the Louisiana Homeowners Association Act, La. R.S. 9:1141.1 to 9:1141.9. These changes do not affect the dicta statement in Brier Lake regarding who can sue to enforce building restrictions.
[3] This comment states, "Building restrictions are ordinarily enforced by actions for injunction brought by the original subdivider or by landowners in a subdivision."