391 So.2d 461 (1980)
Charles E. CABIBI
v.
Mr. and Mrs. Owen L. JONES.
No. 11236.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1980.
McCann and Volk, John J. McCann, New Orleans, for plaintiff-appellee.
Usry, Leefe & Weeks, T. Allen Usry, New Orleans, for defendants-appellants.
Before SAMUEL, GULOTTA and BOUTALL, JJ.
GULOTTA, Judge.
In this dispute between adjacent property owners in Lake Terrace Subdivision in the City of New Orleans, defendants appeal from a judgment ordering them to remove "from the side of Mr. Cabibi's property any structure which encroaches within six feet of the side-property line." We affirm.
Defendants' residence was constructed on their corner lot measuring 100 feet on Jay Street and approximately 114 feet on St. Bernard Avenue. The house faces St. Bernard Avenue. In the rear is an attached two-car garage or carport, enclosed on three sides, approximately four inches off plaintiff's side-property line, with its roof gutter overhanging plaintiff's property by approximately one-half inch.[1]
*462 It is plaintiff's contention that the lot frontage of defendants' property is on Jay Street (lesser dimension), and the garage-carport adjacent to plaintiff's side property is in violation of the subdivision building restrictions, which require main building construction to be no closer than six feet from the side property line.[2] According to plaintiff, dispite defendants' construction of their residence facing St. Bernard Avenue (greater dimension), the lot frontage is on Jay Street and the side-lot building restriction requirement of six feet minimum distance has been violated with the construction of the rear garage/carport within four inches of their property line. Plaintiff argues that by defendants' failure to leave six feet between their garage/carport and the property line they are treating the side yard as a rear yard, and thus have shifted the lot frontage in violation of the building restrictions.[3]
Section IV of these restrictions states, in pertinent part, "No lot shall be shifted as to frontage." Necessarily, the frontage of the lot determines the applicable front, side and rear yard requirements as set forth in the applicable building restrictions and zoning ordinances. The resolution of this dispute, therefore, depends upon the definition of "lot frontage" as used in the Lake Terrace Subdivision building restrictions.
Defendants claim that the Lake Terrace Subdivision restrictions relating to frontage of corner lots are vague and indefinite, and that the provision "no lot shall be shifted as to frontage" in the restrictions is unenforceable because the restrictions do not define how frontage shall be determined.
Although the provision which states that no lot shall be shifted as to frontage is clear, nowhere in the restrictions do we find the definition of frontage. However, John Rock, an expert in the field of architecture and architectural design, testified that because the definition of frontage is not contained in the building restrictions, the normal practice is to look to the city zoning ordinances to obtain a definition of that term. It was Rock's opinion that the "frontage" of the lot involved in the instant case is on Jay Street since the lesser dimension fronts on that street. Michael Bagot, an attorney and an expert in title examination, stated that the accepted practice (as stated in the Comprehensive Zoning Law of the City of New Orleans) is that the smaller street dimension of a corner lot is the frontage of that lot.
The Comprehensive Zoning Law of the City of New Orleans of 1970, as amended, Article 14, Section 2(51) defines "lot frontage" as "the distance for which the front lot line and the street line are coincident." Although "front lot line" is not specifically defined in the zoning ordinances, in Article 14, Section 2(118) "front yard" is defined as:
"A yard extending across the front of a lot between the side lot lines, and being the required minimum horizontal distance between the street and/or building line and the buildable area. On corner lots the front yard shall be provided facing the street upon which the lot has its lesser dimension." (Emphasis added.)
On the other hand, Lawrence J. Bodet, chief engineer for the Orleans Parish Levee Board, testified that insofar as the Lake Terrace Subdivision restrictions are concerned, the phrase "no lot shall be shifted as to frontage" has no meaning whatsoever. According to his testimony, this phrase was *463 inadvertently carried over into the Lake Terrace Subdivision restrictions from the Lake Vista Subdivision plans. Because of the nature of Lake Vista's development, according to Bodet, the phrase was meaningful there, which was not the case with the Lake Terrace Subdivision plan.[4] Bodet admitted, however, that he did not draft the Lake Terrace restrictions; he said he was "generally familiar" with their drafting, but "didn't have too much to do with [the] actual preparation."
Despite the testimony of Bodet, we find no merit to defendants' contention. The Lake Terrace Subdivision restrictions specifically state that no lot shall be shifted as to frontage. The language is clear and unambiguous. Although the definition of frontage is not set forth in the restrictions, our consideration of the Comprehensive Zoning Laws of the City of New Orleans of 1970, as amended, Art. 14, Sec. 2(51 and 118), leads us to conclude that the frontage of a corner lot is the lot line on the street on which the lot has its lesser dimension-in this case, Jay Street.
Defendants alternatively argue that because the construction of their residence fits within the pattern of development for corner lots in the Lake Terrace Subdivision, there exists no violation. In this respect, defendants rely on Art. 10, Sec. 8(2) of the Comprehensive Zoning Laws:
"Where these regulations refer to side streets for corner lots, the side street will normally be the street along which the corner lot has its largest dimensions, but the Director of Safety and Permits, may be guided by the pattern of development in the vicinity of the lot in question in determining which of the two streets is the side street."
Defendants point out that the necessary permits of approval for construction were obtained from the Orleans Parish Levee Board and the City Department of Safety and Permits. They contend this demonstrates that no violation of the building restrictions of Lake Terrace Subdivision or of the Zoning Ordinances had occurred.
Support for this contention was offered by Frank E. Robin, who was Director of Safety and Permits at the time of the construction of defendants' building. He pointed out that the zoning ordinances permit a waiver where the "pattern of development in the vicinity of the lot in question" indicates that frontages have been placed on the streets on which the lots have their greater dimension. Robin testified further that a variance to the lot frontage on Jay Street (lesser dimension) was permitted, in accordance with Article 10, Section 8(2) of the zoning ordinances, because it was clear that it was more beneficial to the owner and more desirable to face the front of the residence on St. Bernard Avenue rather than Jay Street. He admitted, however, that in the instant case, the department was not actually guided by the pattern of development for the reason that no on-site inspections were made of the area to determine a pattern.
When a plaintiff has established the violation of a restriction, the burden shifts to the defendant to prove the restriction has been terminated or abandoned. See LSA-C.C. arts. 780-782; LSA-C.C. art. 2232. See also, Fisher v. Smith, 190 So.2d 105 (La.App. 4th Cir. 1966); Mouille v. Henry, 321 So.2d 377 (La.App. 3rd Cir. 1975).
Although the zoning ordinances permit a variation where the pattern of development in the area indicates otherwise, defendants failed to establish, by competent evidence, that a pattern of development in the subdivision had been established for corner lots *464 with the frontage on the street of greater dimension without adherence to side yard requirements. Clearly, we cannot get from Robin's testimony that a waiver was based on a showing of such a pattern of development. While the exhibits revealed a number of houses on corner lots in Lake Terrace have been built facing the longer street dimension, there was no evidence that any of these houses violated the lot frontage restriction by encroaching on the side line setback requirement.
We might point out further that although the Department of Safety and Permits may have the authority to waive city zoning ordinance requirements, no such authority exists to waive the building restrictions. These restrictions are an agreement between and among the property owners in the subdivision and can only be terminated as provided by law. (See LSA-C.C. arts. 775-783.)
Furthermore, well established is the rule that zoning ordinances neither terminate nor supersede existing building restrictions. LSA-C.C. art. 1945(2); Alfortish v. Wagner, 7 So.2d 708 (La.1942); Olivier v. Berggren, 136 So.2d 325 (La.App. 4th Cir. 1962). Moreover, where subdivision building restrictions are more restrictive than zoning ordinances, the building restrictions will govern. See Oak Ridge Builders, Inc. v. Bryant, 252 So.2d 169 (La.App. 3rd Cir. 1971), writ refused, 253 So.2d 384; Rabalais v. Hillary Builders, 62 So.2d 846 (La. App. 2nd Cir. 1953).
Accordingly, we conclude no showing has been made that a pattern of development in the subdivision had been established permitting lot frontage on the side having the greater street dimension without adherence to side yard requirements.
Having so concluded, we find, as did the trial judge, that the Lake Terrace Subdivision restrictions have been violated, requiring the removal from the side of defendants' property of any structure which encroaches within six feet of the side property line. The judgment is affirmed.
AFFIRMED.

*465 APPENDIX "A"

*466 APPENDIX "B"

NOTES
[1] Plaintiff also alleges several other violations which were not mentioned in the judgment. Plaintiff has neither appealed nor answered this appeal. Accordingly, we do not consider those alleged violations.
[2] Section V(A) of the building restrictions for Lake Terrace Subdivision provides, in pertinent part:

"No part of the main building of a residence shall be built closer than 25' minimum distance from the front property line of the lot, nor closer to either side property line of the lot than 6 feet minimum distance, ...
An attached or detached carport may be constructed in the side yard area, provided its columns or walls are not closer than six (6) feet from the side property line, the roof may project two (2) feet into six (6) foot areas. * * *"
See diagram, Appendix A, and photograph, Appendix B.
[3] The restrictions are silent as to back yard minimum footage requirements.
[4] To support this, defendants offered the building restrictions for the East and West halves of Lake Vista Subdivision, a nearby area developed by the Levee Board before Lake Terrace. (The Lake Vista restrictions were admitted as a proffer only.) These two sets of restrictions also state "no lot shall be shifted as to frontage." These restrictions provide that frontage of each lot shall be on the park or lane adjacent thereto, except for certain specified lots, which are to have their frontages on the streets designated in the restrictions.