639 So.2d 402 (1994)
George Kenneth HARRISON, et al., Plaintiffs-Appellees,
v.
Sidney Glenn MYERS, Jr., Defendant-Appellant.
No. 25902-CA.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1994.
*403 William H. Cook, Jr., Shreveport, for appellant.
Pringle & Herzog by John R. Herzog, Shreveport, for appellee.
Before BROWN and WILLIAMS, JJ., and LOWE, J. Pro Tem.
BROWN, Judge.
Defendant, Sidney Glenn Myers, Jr., resides in a home he purchased in July 1990 in the Harwick Place Subdivision of Caddo Parish. In the summer of 1992, Myers began *404 construction on an iron fence over six feet tall. The fence was topped with outward, curving spikes. Myers believed people were entering his home and moving articles around and constructed the fence for protection.[1]
Three of Myers' neighbors sought mandatory and injunctive relief to halt the construction of the fence as a violation of the subdivision's building restrictions and protective covenants. Myers, however, completed the fence and also installed large floodlights on four 22-foot poles in his backyard. These floodlights illuminated the property from dusk till dawn. Plaintiffs filed an amended petition seeking to force Myers to remove the fence and lighting and further, to make alterations to his residence, which was alleged to extend over the subdivision setback line.
Following testimony, the trial court conducted an on site inspection during both daylight and night hours. Thereafter, the trial court found for plaintiffs and ordered the fence and floodlights dismantled and removed. Myers was also enjoined from further construction in violation of the building restrictions and protective covenants. Although part of Myers' home encroached over the 50 foot setback line, the trial court declined to issue injunctive relief because such a remedy would impose an undue hardship.
Myers appeals, arguing that the trial court committed error in: (1) failing to find that the setback requirements of the building restrictions and protective covenants had been abandoned; (2) ordering removal of defendant's fence as an "unsightly object" to the neighborhood; and (3) ordering removal of defendant's floodlighting as a "nuisance" to the neighborhood. We affirm.

DISCUSSION
Prior to 1977, building restrictions were governed by jurisprudence. Now Civil Code Articles 775 through 783 regulate building restrictions. Building restrictions are sui generis real rights which may be enforced by mandatory and prohibitory injunctions. In a subdivision subject to building restrictions, each landowner is adversely affected by violations and, therefore, has a substantive right and procedural standing to enforce the building restrictions. Lakeshore Property Owners v. Delatte, 579 So.2d 1039 (La.App. 4th Cir.1991).
Once a plaintiff seeking an injunction has established a violation of a restriction, the burden shifts to the defendant to prove a termination or abandonment of that restriction. Lakeshore Property Owners, supra; Cabibi v. Jones, 391 So.2d 461 (La.App. 4th Cir.1980).
A particular building restriction or the restrictions in their entirety may be abandoned. When the entire plan is abandoned the affected area is freed of all restrictions; when a particular restriction is abandoned, the affected area is freed only of that restriction. LSA-C.C. art. 782. Doubt as to the existence, validity, or extent of building restrictions is resolved in favor of the unrestricted use of immovables. LSA-C.C. art. 783.
Whether a waiver or relinquishment of a restriction has occurred by common consent or universal acquiescence depends upon the facts of each case. Lakeshore Property Owners, supra. Where violations have occurred without protest, so as to substantially defeat the general scheme or purpose of the building restrictions or a particular restriction, the affected restriction is considered waived or relinquished and cannot subsequently be enforced. Lakeshore Property Owners, 579 So.2d at 1043. (Citations omitted).
The character, materiality, number of the violations and their proximity to the objecting residents are all factors to be considered in determining if a restriction has *405 been abandoned by acquiescence. When frequent and substantial violations pass without objection, the restriction is regarded as abandoned if the property owner against whom abandonment is asserted knew, should have known or had a duty to know of the alleged violation. Insubstantial, technical or infrequent violations of a restriction, which are not subversive to the general plan or scheme, weigh little towards establishing an abandonment. Id. (Citations omitted).
The restriction that Myers claims has been abandoned reads:
4. Building Location. No building, including, without limitation, customary appurtenant buildings, shall be located on any lot nearer than fifty (50) feet to the front lot line or nearer than twenty (20) feet to either side lot line or nearer than twenty-five (25) feet to the rear lot line; provided, however, that in the case of corner lots the setback from the side street line shall not be less than fifty (50) feet. All dwellings must face the street upon which the lot fronts; provided, however, that dwellings upon Lot 9, Lot 10, Lot 15, and Lot 16 may face either street bordering said lot.
This setback restriction also applies to fences:
15. Fences. No fences shall be placed or constructed or allowed to remain in front of the minimum setback line.
Along Stonehedge Drive, Myers' fence is from 7.2 to 7.8 feet from the property line, its full length violating the setback line. Along Stonehedge Circle, his fence is from 2 to 29 feet from the property line. The fence running along the adjoining lot is virtually on the property line for much of the distance. The fence across the rear, however, does not encroach on the setback restriction. The violations having been established, the burden fell on Myers to prove an abandonment of this particular restriction. Lakeshore Property Owners, supra; Cabibi, supra.
Myers' expert, John Robert Bowman, Sr., a civil engineer, testified to nine existing setback violations on the subdivision's 19 building sites.
At the residence of plaintiff, William B. Goyne, a fence extended across a third of his sideyard and was between 46 and 51 feet from the property line. Thus, it encroached over the 50 foot setback line at its worst point by only four feet.
Plaintiff, Dr. George Harrison, had fencing on Stonehedge Drive running 29 to 42 feet from the property line. The Harrison property is a corner lot and the fence runs along their backyard with a portion extending along the side of their property. The front of the residence is not fenced.
Across a portion of his Stonehedge Drive frontage, Edward Chumley had placed large brick columns on both sides of the driveway. A four to five foot iron bar fence extended from the columns along the front property line approximately 75 feet on either side of the entryway. This structure did not extend across or enclose the entire frontage owned by Chumley; however, it was located on the property or street line.
The last offending fence was located on the Zweig property on the exterior side of the subdivision which adjoins Norris-Ferry Road. This six foot wooden fence was in a forested area and was six feet back from the property line. It ran from the rear to the front of the property. The front of the residence is not fenced.
The other violations noted concerned small out-buildings. Goyne had a metal building on skids located two feet from a side property line and 22 feet from the rear property line. Charles Rogers had a small building painted the same color as his house which was five feet from the rear property line and eight feet from the side property line.[2] Michael Lewis had a six by ten foot doll house estimated to have been four feet from the side lot line. Bowman stated that this building could not be seen from the street. A well-house on Dr. Harrison's property also *406 encroached over the setback line; however, it was only three to four feet square and two feet high.
In order to ascertain if these violations have caused an abandonment of the setback restrictions, the intended scheme of the subdivision must be determined. It is our view that, taken as a whole, the subdivision scheme is intended to create a residential neighborhood with large, open lots. We also find that the restrictions do not bar the use of fences on the lots, but that they do regulate them to a particular area within the described setback lines.
The offending fence on the Goynes' property is at best a technical violation of the setback restriction and therefore weighs little toward abandonment. Lakeshore Property Owners, 579 So.2d at 1043. It is in a side yard and violates the 50 foot setback by only four feet. We feel that this fence is within the scheme of the building restrictions.
The fence in violation on the Zweig property borders Norris-Ferry Road. This road is not subject to the subdivision's building restrictions. It is a major thoroughfare with heavier and faster traffic than the subdivision streets. The fence on the Harrison property is part of a larger, permissible fence that encloses the backyard area. The offending portion is 8 to 21 feet over the 50 foot setback. The trial court found the violation to be minor.
Of all the setback violations involving fences, Chumley's is the most significant as it separates his land from the rest of the neighborhood. Although Chumley's fence undermines the purpose of the building restrictions, it does not circumscribe the property (in fact it does not run the entire length of the front property line), has no gate and is decorative in design.
Weighing the above, the trial court had to resolve whether these violations, combined with the setback violations of the four small out-buildings, substantially defeat the general scheme or purpose of the building restrictions. The trial court was in the best position to determine the character and severity of the violations. The trial court had the added benefit of an on-site inspection. The determination by the trial court of the materiality of these violations should not be overturned absent an abuse of its wide discretion. We can not say that this discretion was abused. The majority of the violations do not subvert the purpose of the building restrictions and therefore, weigh little towards establishing an abandonment. The restriction on fence placement has not been abandoned. In general, the fences in the neighborhood are in concurrence with the restriction. Of the four violations, three are technical or insubstantial and non-subversive to the general plan and therefore weigh little toward establishing an abandonment. We find that the one violation of any weight (Chumley) is not sufficient in relation to the number of lots affected by the restriction to result in an abandonment of this particular restriction.
Myers also claims that the trial court erred in ordering the removal of his fence as an "unsightly object" to the neighborhood. Defendant argues that the trial court's finding that the fence is in violation of paragraph 6 (nuisances) of the building restrictions and protective covenants is a condemnation of the fence because of its design. He further contends that the purpose of paragraph 6 is to control activities in the neighborhood and that applying this paragraph to his fence amounts to "architectural control."
Defendant relies on Article 668 of the Louisiana Civil Code, which provides:
Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet everyone has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbor's house, because this act occasions only an inconvenience, but not a real damage.
While defendant might argue that one should be allowed to use his property on an unrestricted basis, he completely ignores the *407 long established law that building restrictions are sui generis real rights. Lakeshore Property Owners, 579 So.2d at 1041. This particular building restriction reads:
6. Nuisances. No noxious or offensive activity shall be carried on upon any lot, nor shall anything be done thereon which may be or may become an annoyance or a nuisance to the neighborhood. No weeds, underbrush or other unsightly growths shall be permitted to grow or remain upon any lot, and no refuse pile or unsightly objects shall be allowed to be placed or suffered to remain anywhere thereon.
The language of paragraph 6 clearly forbids anything done on the property which is a nuisance to the neighborhood or is an unsightly object. The trial court found that the height, design and placement of the fence was "an annoyance and nuisance to the neighborhood" and was therefore a violation of this provision of the building restrictions and protective covenants.
The applicable standard of review is the manifest error/clearly wrong standard, which precludes setting aside a trial court or jury's findings of fact unless those findings are clearly wrong in light of the record viewed in its entirety. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 01/14/94), 630 So.2d 706 (La.1994); Whitaker v. Mullinax, 628 So.2d 222 (La.App. 2d Cir.1993).
The issue for the reviewing court is not whether the trier of fact is right or wrong, but whether the factfinder's conclusion was reasonable. Stobart v. State of Louisiana, DOTD, 617 So.2d 880 (La.1993); Dismuke v. Grambling State University, 25,482 (La.App. 2d Cir. 04/05/94), 637 So.2d 555. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra. The record must be reviewed in the light that most favorably supports the judgment. Theriot v. Allstate Insurance Co., 625 So.2d 1337 (La.1993); Whitaker, supra.
Taking into account the testimony and evidence, and considering that the trial judge viewed the fence firsthand, we cannot find that his decision is unreasonable, or that there was manifest error in the making of that decision. Further, we find that the evidence is sufficient to support the determination that the fence is a nuisance as defined by paragraph 6 of the building restrictions and protective covenants.
Finally, defendant argues that the trial court erred in ordering the removal of his floodlighting as a "nuisance" to the neighborhood. Defendant-appellant submits that paragraph 6 (nuisances) of the building restrictions and protective covenants should not be used to proscribe or limit the use of floodlighting. He further suggests that this court take judicial notice that use of outside lighting is encouraged by law enforcement officers to deter criminal activity.
Defendant testified that his floodlighting consisted of four poles each approximately 22 feet tall, positioned in the corners of his backyard. Each pole is topped by two lights which are illuminated from dusk to dawn. John F. Woods, III, another plaintiff, testified that these lights shone into two bedrooms of his house and Dr. Harrison testified that the lights shone into his backyard and caused his dogs to bark throughout the night. The trial court inspected defendant's floodlights at night and found them to be obnoxious and an annoyance due to their brightness, intensity, and duration of illumination.
Other than the criminal deterrence provided by outside lighting, defendant cites no authority for why the trial court's decision should be set aside. The manifest error/clearly wrong review standard precludes the setting aside of a trial court's or jury's findings of fact unless those findings are clearly wrong in light of the record viewed in its entirety. Considering the testimony and evidence, defendant's lighting system seems excessive for his circumstances. Relying on this and the trial judge's firsthand observation of the site, we find that the trial court's decision was not manifestly erroneous or clearly wrong and that there was sufficient evidence for the trial court to find that the floodlighting constituted a nuisance as defined in paragraph 6 of the building restrictions and protective covenants.
*408 For the reasons assigned, we affirm the judgment of the trial court. All costs are to be assessed against appellant.
AFFIRMED.
NOTES
[1] Other security measures installed by Myers included motion-activated cameras under the eaves of the house, an automatic gate opener controlled from inside the house and lead shields for the bedrooms and fireplace. Myers described letting an investigator out of the gate and returning to find a bed a foot away from the wall and explained that the 1/8 of an inch lead shields were a defensive measure against electro-magnetic beams being projected into the house by street gangs.
[2] This encroachment on the side lot line is not cited in appellant's brief but is part of the trial testimony given by Mr. Bowman.