672 So.2d 1070 (1996)
Harold TRAVASOS and Theresa Russo, Plaintiffs-Appellants,
v.
Philip STOMA, Sr. and Mary Elizabeth Leblanc Stoma, Defendants-Appellees.
No. 95-1568.
Court of Appeal of Louisiana, Third Circuit.
April 3, 1996.
Rehearing Denied May 22, 1996.
*1071 Paul Joseph Hebert, Lafayette, for Harold Travasos et al.
Jason Wayne Robideaux, Lafayette, for Philip Stoma Sr. et ux.
Before DOUCET, C.J., and SULLIVAN and GREMILLION, JJ.
DOUCET, Chief Judge.
This case arises out of an alleged violation of subdivision restrictions in the construction of a metal building on lot 13 of Fountainhead Center Subdivision, in Lafayette, Louisiana.[1]
Fountainhead Center Subdivision was dedicated in May 1980. The dedication included the following building restrictions, which are at issue in this case:
6. Exteriors on all buildings shall be constructed of Brick, Stucco, Stone or Aggregate Precast Panels or Wood, allowing only ten (10%) percent for other Decorative Materials as trim only.
7. All roofs shall be constructed of Built-up Aggregate Roof, Slate, Clay Tile, Asbestos, Asphalt, Fiberglass or Copper; it is therefore prohibited to use Corrugated Metal or Metal Roof need (sic) recoating.
* * * * * *
20. If owners hereto, or their heirs or assigns, shall violate or attempt to violate any of the covenants or restrictions herein, it shall be lawful for any other person or persons owning other lots in this subdivision, or any portion thereof, to prosecute any proceeding at law or in equity against the person or persons so violating or attempting to violate and to prevent him or her from so doing by appropriate proceedings, including injunctive process, or to recover damages or other dues for such violation, providing, however, that violation of said restriction shall in no event cause any reversion of titles to the said property.
* * * * * *
22. Each lot owner shall cause a sidewalk to be constructed as hereinafter described upon the completion of any improvements placed on any lot, or within two (2) years of the purchase date of said lot from C.D.T. Agency Corporation, whichever occurs first,....
The trial judge correctly outlined the underlying facts and the trial testimony in this case in his "Reasons for Ruling:"
The plaintiffs, Harold and Theresa Travasos, purchased Lot 15 of the Fountainhead Center Subdivision in December of 1983 as an investment. There has been no construction on this property, and no commercial use has been made of it to date. Only four or five businesses have located in the subdivision since its dedication in 1980.
One of them is defendant's furniture store. In February of 1984, Philip and Mary Elizabeth Stoma purchased Lot 14B of Fountainhead Center adjacent to the plaintiffs' lot and constructed a building of cinder block, masonry, and flake board with a metal roof. They have operated their retail furniture business from this building ever since. The site includes a parking lot and signs near the roadway to mark the location of the store.
In April of 1993, the Stomas acquired Lot 13 of Fountainhead Center immediately behind the furniture store, and erected a metal building for use in their business as a warehouse for furniture. The construction of the metal building precipitated a complaint from the plaintiff, Harold Travasos, to the developer, Cecil Trahan, who in turn wrote a letter to the defendant, Philip Stoma, Sr. informing him of the restriction against the use of metal construction in the subdivision. It was stipulated at *1072 trial that this building is, indeed, in violation of the subdivision restrictions contained in the act of dedication, assuming that those restrictions are still viable and have not been abandoned.
Philip Stoma, Sr. maintains that he was unaware of any subdivision restrictions affecting his property until he received notice of the violation from the developer concerning his new metal building. He acknowledges that his deed contains language reflecting the existence of the subdivision restrictions....
The defendant, Philip Stoma, Sr., testified further in his trial testimony that any restrictions that once existed in the subdivision development have been abandoned as a result of numerous violations, which have been allowed to exist through the years without any repercussion. Enforcement of the subdivision restrictions is apparently entrusted to an architectural control committee chaired by the developer, Cecil Trahan. It is the defendant's testimony that he has never been required to seek or obtain the approval of the committee regarding any condition on his property, nor has he ever before received notice of any violation from the committee or the developer despite numerous violations on his property as well as on the property of others in the subdivision.
Examples cited by the defendant include the metal roof on his original furniture store built in 1986 in apparent violation of Restriction No. 7; two separate commercial signs he has erected at the front of his property, one in 1986 and a replacement in late 1993, both in apparent violation of Restriction No. 12; the location of garbage bins at various locations in the subdivision over the past several years in plain view and seemingly in violation of Restriction 17; the absence of a sidewalk at the Stoma Furniture Store location in violation of Restriction No. 22-D; canopies attached to the Stoma Furniture Store building in violation of Restriction No. 18; and violations of Restrictions Nos. 9 and 10 regarding landscape and maintenance.
Stoma insists that at no time during the construction of his furniture store or parking area, or the operation of his business on the property was he ever contacted by or required to seek approval from the architectural control committee. Nor had anyone ever before complained about any of the violations he has listed as examples,...
Likewise, prior to construction of the metal warehouse behind the furniture store, which has precipitated the instant controversy, Stoma received no communication from the architectural control committee, even though Cecil Trahan, the developer, was fully aware that he was constructing a new metal building. Neither were any complaints ever lodged until the one from the plaintiff.
The defendant maintains that he never deliberately violated any subdivision restrictions. Subsequent to receiving the notice from the developer, Stoma began to take steps he believed would bring the building into compliance, and for which he claims to have secured approval from the developer. He has covered part of the metal warehouse with a synthetic stucco material at a cost of $8,000, and anticipates that it would cost an additional $10,000 to $15,000 to complete this project. The original cost to construct the warehouse was $140,000 to $150,000.
The plaintiff, Dr. Harold Travasos, testified at trial that he was fully aware of the subdivision restrictions when he purchased the property in December 1983, for $335,000. He favored the restrictions believing that they helped to protect the value of the property.
He became aware of the construction of the metal warehouse in question in June of 1993, and immediately called the developer to complain, which in turn precipitated the notice from the developer to the defendant that he was in violation of a subdivision restriction.
The defendant, Stoma, communicated with the plaintiff regarding the problem, and was made aware of the plaintiff's concern about devaluation of his property, which is adjacent to the warehouse location. The defendant informed the plaintiff that he was exploring some options for *1073 covering the metal exterior of the warehouse to bring it into compliance.
Stoma proceeded with his plans to apply synthetic stucco to the metal building, but communication between him and Dr. Travasos broke down. The plaintiff, Dr. Travasos, consulted an architect who expressed doubt regarding the feasibility of the synthetic stucco covering. In August 1993, the plaintiff sought the services of an attorney and formally rejected the defendant's proposal. In December 1993, the instant suit was filed.
The plaintiff testified that, since the filing of this lawsuit, specifically in February 1994, he was approached by two separate restaurant operators who were interested in leasing his property. There was discussion with these prospective tenants concerning the restriction on metal buildings and the ongoing litigation over Stoma's warehouse. He has not heard from them again, and can only speculate that the metal building on the adjacent property or the litigation surrounding it is the cause of their lack of further interest.
Wayne Corne, the architect hired by the plaintiff, testified that he has reviewed the subdivision restrictions and proposed plans from the defendant to apply a synthetic stucco overcoat onto the metal structure. In his opinion, this material would not bring the building into compliance. The restrictions are very specific, and strictly prohibit metal exteriors on any building in the subdivision. The synthetic covering in his view would not change the fact that the structure is made of metal. He also has misgivings about the ability of this material to adhere to metal, although the contractor engaged by Stoma assures him that it will.
Allen Angers, a licensed real estate broker and appraiser testified that he was hired by the plaintiff to determine the impact of a metal structure on the value of adjacent property. In his opinion, the impact would be negative because it may forecast the erection of other such buildings in the area and could cause a reversion in the classification of the property from high-grade commercial down to industrial. He testified that the value could be depreciated by 10 to 15%, or from $1.00 to $1.50 per square foot.
The trial judge found certain subdivision restrictions had been abandoned. These included those dealing with signs, location of garbage cans, sidewalks and the need to have approval for canopies. He further found that restriction number 7, which prohibited metal roofs, had been abandoned. However, he found that the whole plan was not abandoned since the violations had not disrupted the intended plan. He found, however, that the metal building built by the defendant, Stoma, was a violation of a viable subdivision restriction. He appointed an architect to "examine the subdivision restrictions, the subdivision properties and the metal structure." The architect was then to make recommendations regarding the feasibility and most appropriate manner of bringing the building into compliance.
The court further denied the plaintiff's claim for damages, finding that the claim was speculative because there was no concrete evidence that any lease has been lost because of the existence of the metal building on lot 13. He denied plaintiff's claim for attorney's fees.
After hearing from the court-appointed architect, the trial judge issued supplemental reasons for judgment. As a result of the report, he found that the building could be brought into compliance by applying a stucco or synthetic stucco finish to the exterior of the building. He ordered that the building be modified to bring it into compliance with restriction number 6. However, having already found that restriction number 7 was abandoned, he ordered no change to the roof. Defendants were ordered to pay costs.
The plaintiffs appeal this decision with regard to the abandonment of restriction number 7 and the denial of attorney's fees.

RESTRICTION NUMBER SEVEN
The plaintiffs first argue that the trial judge erred in finding that restriction number 7, prohibiting metal roofs, had been abandoned.
La.Civ.Code art. 782 states that:

*1074 Building restrictions terminate by abandonment of the whole plan or by a general abandonment of a particular restriction. When the entire plan is abandoned the affected area is freed of all restrictions; when a particular restriction is abandoned, the affected area is freed of that restriction only.
On appeal we are considering only whether a particular restriction was abandoned. The court, in Lakeshore Property Owners Ass'n, Inc. v. Delatte, 579 So.2d 1039 (La.App. 4 Cir.), writ denied, 586 So.2d 560 (La.1991), explained the determination of whether a restriction has been abandoned as follows:
Whether a general waiver or relinquishment of a restriction has occurred by common consent or universal acquiescence, depends upon the facts of each case. Edwards v. Wiseman, [198 La. 382, 3 So.2d 661 (La.1941)]....
Whether acquiescence to violations is sufficient to cause abandonment of a restriction depends upon the character, materiality and number of the violations and their proximity to the objecting residents. Guyton v. Yancey, [240 La. 794, 125 So.2d 365 (La.1960)]; Gwatney v. Miller, 371 So.2d 1355 (La.App. 3d Cir.1979); Ritter v. Fabacher, 517 So.2d 914 (La.App. 3d Cir.1987); East Parker Properties, Inc. v. Pelican Realty Co., 335 So.2d 466 (La.App. 1st Cir.1976), writ den., 338 So.2d 699 (La. 1976). When frequent and substantial violations of a restriction pass without objection, the restriction is regarded as abandoned if the property owner against whom abandonment is asserted knew, should have known or had a duty to know of the alleged violation. East Parker Properties, Inc. v. Pelican Realty Co., supra. See also Lakeshore Property Owners Ass'n v. Delatte, [524 So.2d 126 (La.App. 4 Cir.1988)]. Insubstantial, technical or infrequent violations of a restriction, which are not subversive to the general plan or scheme, weigh little towards establishing an abandonment. Id.; Guyton v. Yancey, supra; Marquess v. Bamburg, [188 So.2d 721 (La. App. 2 Cir.1966)]; Cook v. Hoover, 428 So.2d 836 (La.App. 5 Cir.1983)]; Gwatney v. Miller, supra; Antis v. Miller, [524 So.2d 71 (La.App. 3 Cir.), writ denied 531 So.2d 271 (La.1988)].
Doubt as to the existence, validity or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. LSA-C.C. art. 783; Camelot Citizens Ass'n v. Stevens, [329 So.2d 847 (La.App. 1 Cir.), writ denied, 333 So.2d 242 (La.1976)]; Salerno v. De Lucca, 211 La. 659, 30 So.2d 678 (1947).
Id. at 1043. See also Harrison v. Myers, 25,902 (La.App. 2 Cir. 6/22/94), 639 So.2d 402.
Restriction number 7, which the trial judge found to have been abandoned, prohibits the use of metal roofs except those made of copper. Although the record does not so state, we assume that the roofs on defendants' buildings are not of copper, since we would not otherwise be concerned with them. The defendants admit that the metal roofs on their two buildings constitute violations of restriction number seven. "Once a plaintiff seeking an injunction has established a violation of a restriction, the burden shifts to the defendant to prove a termination or abandonment of that restriction. Lakeshore Property Owners, supra; Cabibi v. Jones, 391 So.2d 461 (La.App. 4th Cir.1980)." Harrison, 639 So.2d at 404. The trial testimony indicates that a metal roof had been in place on the defendants' furniture store since it was built in 1984. While he did not say so, the trial judge apparently based his determination that the restriction had been abandoned on the fact that the defendants had a metal roof on the existing building without exciting objections from other property owners. None of the four or five other buildings in the subdivision had a metal roof. While the metal roof could be seen, it was not visible from the front of the building. Consequently, the record does not support a finding that there were frequent and material violations of restriction number seven. Accordingly, we conclude that the defendants did not carry their burden of proving that restriction number 7 was abandoned. We will reverse the judgment of the trial court in this regard. Therefore, the roof of the defendants' building on lot 13 must be brought into compliance with the subdivision restrictions. We will remand the matter to the trial court to *1075 determine whether the roof on the building located on lot number 13 can be brought into compliance with the restrictions and the best method for so doing.

ATTORNEY'S FEES
Plaintiff further contends that the trial judge erred in failing to make an award of attorney's fees. He argues that subdivision restriction number 20 provides for the payment of attorney's fees. Restriction number 20 provides, in pertinent part, that:
If owners hereto, or their heirs of assigns, shall violate or attempt to violate any of the covenants or restrictions herein, it shall be lawful for any other person or persons owning lots in this subdivision, or any portion thereof, to prosecute any proceedings at law or equity ... to recover damages or other dues for such violation....
It is plaintiffs' contention that "other dues" includes attorney's fees. We disagree. "Attorney fees are not recoverable except where expressly authorized by statute or contract. Liberto v. Villard, 386 So.2d 930 (La.App. 3rd Cir.1980); Nassau Realty Co., Inc., v. Brown, 332 So.2d 206 (La.1976)." Antis v. Miller, 613 So.2d 1034, 1037 (La.App. 3 Cir. 1993). Contrary to plaintiff's arguments neither the subdivision restriction nor any other document admitted into evidence herein specifically authorizes the assessment of attorney's fees.

CONCLUSION
The judgment of the trial court is reversed insofar as it finds subdivision restriction number 7 to have been abandoned. Therefore, the roof of the defendants' building on lot 13 must be brought into compliance with the subdivision restrictions. The case is remanded for further proceedings to determine whether the roof on the building located on lot number 13 can be brought into compliance with the restrictions and the best method for so doing. In all other respects the trial court's judgment is affirmed. Costs of this appeal are assessed one-half to the defendants and one-half to the plaintiffs.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
NOTES
[1] While there is considerable testimony concerning violations of subdivision restrictions in connection with the defendants' other building on lot 12, this litigation concerns only the building on lot 13.