867 So.2d 974 (2004)
Robert & Collene CHAMBLESS, Plaintiffs-Appellees
v.
Sheila A. PARKER, Defendant-Appellant.
No. 38,276-CA.
Court of Appeal of Louisiana, Second Circuit.
March 3, 2004.
*975 Paul Loy Hurd, Monroe, for Appellant.
Fred R. McGaha, Monroe, for Appellees.
Before PEATROSS, DREW & LOLLEY, JJ.
*976 PEATROSS, J.
This appeal arises from a denial of Defendant Sheila Parker's ("Parker") motion for summary judgment and grant of Plaintiffs' Robert and Collene Chambless, Jerry and Marilyn Moses and Hollis Faulk ("Plaintiffs"), motion for summary judgment. Parker now appeals the judgment of the trial court. For the reasons stated herein, we affirm.

FACTS
In July 2000, Parker purchased two lots (Lots 10 and 11) in the "Frost Estates," a subdivision in Ouachita Parish. Parker purchased the lots with the intent of renting out mobile home slots. In late August or early September 2000, Parker had placed four mobile homes on the properties and had leased some of them for residential occupancy. On October 27, 2000, Plaintiffs filed suit against Parker alleging that, according to the building restriction found in the deeds from the original landowner to the first vendees of Lots 10 and 11, the owner of the land could have no more than one residence on the land and the land could not be used for anything other than a residential purpose. The restriction found in the original deeds provided that:
Said property shall be used for residential purpose only and only one residence shall be constructed thereon, the same to cost not less than $10,000.[1]
This restriction was not in the deeds given to Parker by her predecessor in title when she purchased the land; however, the building permits she received from the Ouachita Parish Clerk of Court's office state that she should make herself aware of possible deed restrictions. In their lawsuit, Plaintiffs sought to enjoin Parker from using Lots 10 and 11 for any commercial purposes, other than what is consistent with the restriction found in the deeds.[2]
Subsequently, Plaintiffs filed a motion for summary judgment with the trial court and Parker also filed a motion for summary judgment, arguing that the restriction in the original deeds does not qualify as a building restriction because the subdivision does not meet the requirements of a general development plan as required by La. C.C. art. 775, et seq. La. C.C. art. 775 provides:
Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. The plan must be feasible and capable of being preserved.
Further, Parker asserted that the restriction in the original deeds does not even qualify as a predial servitude because it does not meet the requirements for predial servitudes found in La. C.C. art. 646, et seq., and La. C.C. art. 697, et seq.
In addition, Parker contended that, if the court found that the restriction in the deeds did qualify as a building restriction, this restriction has been abandoned pursuant to La. C.C. art. 782, which provides:
Building restrictions terminate by abandonment of the whole plan or by a general abandonment of a particular restriction. When the entire plan is abandoned the affected area is freed of all restrictions; when a particular restriction *977 is abandoned, the affected area is freed of that restriction only.
In support of her argument, Parker submitted evidence that she asserted showed that the surrounding communities of her subdivision consist of mobile homes and mobile home parks, that two lots in her subdivision have mobile homes on those lots and that one lot owner in her subdivision is operating a commercial welding service. Finally, Parker also contends that, if the court found that the restriction in the deeds did qualify as a building restriction, she is following the restriction because the mobile homes on her property are residential activity.
The trial court granted Plaintiffs' motion for summary judgment, finding that the restriction in the deeds is either a building restriction or a predial servitude; and, consequently, since no genuine issue of material fact was remaining, Plaintiffs were entitled to their injunction against Parker. Parker's motion for summary judgment was denied. Parker now appeals, raising the following assignments of error (verbatim):
1. The district court committed legal error in finding that the Frost language meets all the legal requirements to comprise "building restrictions" under La. C.C. art. 775 et seq;
2. The district court committed legal error in finding that the Frost language meets all the legal requirements to comprise a "predial servitude" under La. C.C. art. 646 et seq;
3. The district court committed legal error in failing to find that, assuming that the Frost language is a "building restriction" under La. C.C. art. 775 et seq., said building restrictions has been abandoned under La. C.C. art. 782, in relation to any prohibition of the placement of multiple mobile homes on lots 10 and 11; and,
4. The district court's factual finding that renting mobile home slots for residential mobile homes is inconsistent with the Frost language, in that this activity (1) is a "residential" activity, and (2) does not involve the construction of any improvement that are prohibited by the Frost Language.

DISCUSSION
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.

Building Restrictions
Parker argues that the subdivision does not meet the requirements of La. C.C. art. 775, because the building restriction in the deeds is not part of a general development plan; and, thus, it cannot be enforced. We do not agree.
The property owners in the subdivision have the right to bring enforcement actions to prohibit any use of the property that does not comport with the general plan of development. See La. C.C. art. 779 and comments thereafter. Courts in *978 Louisiana have held that, in order for a building restriction to be enforced, however, it must be part of a general development plan. See R And K Bluebonnet, Inc. v. Patout's of Baton Rouge, Inc., 521 So.2d 634 (La.App. 1st Cir.1988). Building restrictions constitute real rights[3] only in the framework of subdivision planning. Ezell v. Vaughn, 496 So.2d 534 (La.App. 1st Cir.1986). In Murphy v. Marino, 60 So.2d 128 (La.App. 1st Cir.1952), the court held that, in order to find that a general development plan existed, the restriction had to be applied to at least a particular part of the subdivision, known to each purchaser and thereby, by reference or implication, forming a part of his contract with the subdivider. In Richard v. Broussard, 378 So.2d 959 (La.App. 3d Cir.1979), the court found that a building restriction did not exist because the original landowner did not have an orderly subdivision plan. The court, in Richard, supra, found that formal planning of a subdivision, platting by a surveyor, subdividing lots from the beginning and an evident scheme or plan of the subdivision would show that a general development plan existed.
The fact alone that restrictive covenants are inserted into individual acts of sale does not establish that they were not intended to pursue a general plan of development for the subdivision. Gwatney v. Miller, 371 So.2d 1355 (La.App. 3d Cir. 1979). In addition, Louisiana law does not require that the restriction exist in every deed in the lots of a subdivision in order for a general development plan to exist. On the contrary, Louisiana law provides that a general development plan can exist even if only most of the deeds of lots in a subdivision contain the restriction. La. C.C. art. 775 cmt. e provides, in pertinent part:
When restrictions are imposed by stipulations inserted in individual acts of sale, care should be taken to impose uniform restrictions on most, if not all, individual lots in the subdivision. Omission to make the restrictions uniform or to insert them in a substantial number of sales may be taken to indicate absence of a general development plan. (Emphasis added.)
As real rights, building restriction clauses are not rights that are personal to the vendor. Five N Company, L.L.C. v. Singer A & P Remainder Trust, 97-2165 (La.App. 1st Cir.11/6/98), 721 So.2d 1066, writ denied, 98-3051 (La.2/5/99), 738 So.2d 4. Building restrictions inure to the benefit of all other property owners under a general plan of development: such restrictions are real rights running with the land. Blessey v. McHugh, 94-0555 (La. App. 1st Cir.7/27/95), 664 So.2d 115. Once a building restriction has been imposed upon the land by a properly recorded act which transfers the property, the restrictions affect future assigns and vendees, even if the building restriction is later omitted in subsequent deeds. Clark v. Reed, 122 So.2d 344 (La.App. 2d Cir.1960); McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960). Moreover, the fact that no subdivision plat was of record when the building restriction was created does not affect the validity of the restrictions. Fitzwater v. Walker, 281 So.2d 790 (La.App. 3d Cir.1973).
Building restrictions are a means of insuring the lasting aesthetic and monetary value of property. 4626 Corp. v. Merriam, 329 So.2d 885 (La.App. 1st Cir.1976), writ refused, 332 So.2d 800 (La.1976). The *979 owners of lots in a subdivision with building restrictions expect those restrictions to be enforced.
In the case sub judice, there were eighteen lots established in the subdivision. Of those eighteen lots, the deeds in thirteen of the lots contained the restrictive language. Even though not all the deeds contained the restriction, most of the deeds did contain it, including the deeds to Lots 10 and 11. The restrictive language in the deeds to each of the thirteen lots was exactly the same. An orderly subdivision plan was established by Benton Frost in 1963. Mr. Frost formerly planned his subdivision, had it platted by a surveyor and subdivided his land into lots from the beginning. The plat of this subdivision was filed into the Plat Book in the Ouachita Parish records in 1963. In reviewing the layout of the lots in the subdivision and the characterization of each lot, we conclude that a general plan of development was established by Mr. Frost. Since the restriction was inserted in pursuance of a general development plan, there is no doubt that the restrictive language in the deeds to the owners of these lots was a building restriction. We find that Parker's land is subject to a valid building restriction and is enforceable in this subdivision. Parker's first assignment of error is without merit.

Building Restriction Abandonment
Parker asserts that, even if this court finds that an enforceable building restriction exists in this case, the restriction has been abandoned due to a number of violations of it that have taken place in the subdivision that have not been enforced. We find no merit in this assertion.
After a plaintiff seeking an injunction enforcing a building restriction has established a violation of the restriction, the burden shifts to the defendant of the restriction to prove its abandonment. Harrison v. Myers, 25,902 (La.App.2d Cir.6/22/94), 639 So.2d 402. La. C.C. art. 782 cmt. b provides, in pertinent part:
Abandonment of the entire restrictive plan is ordinarily predicated on a great number of violations of all or most restrictions. Upon abandonment of the entire plan all restrictions fall, and the use of the property is free for all purposes. Abandonment of a particular restriction is predicated on a sufficient number of violations of that restriction in relation to the number of lots affected by it. Thus, if a restriction requires that a building should face a certain street, or should be erected a number of feet from the property line, only violations on property subject to the same restrictions are considered in determining the question of abandonment. When the violations are sufficient in number to warrant the conclusion that a particular restriction has been abandoned, the property is freed of that restriction only. (Emphasis added.)
In deciding whether there has been abandonment, the court must decide what the subdividers intended the scheme or plan to be and then inquire into alleged violations to determine whether the plan has been disrupted. East Parker Properties, Inc. v. Pelican Realty Co., 335 So.2d 466 (La.App. 1st Cir.1976), cert. denied, 338 So.2d 699 (La.1976).
Whether a waiver or relinquishment of a restriction has occurred by common consent or universal acquiescence depends upon the facts of each case. Lakeshore Property Owners Association, Inc. v. Delatte, 579 So.2d 1039 (La.App. 4th Cir.1991), writ denied, 586 So.2d 560 (La.1991). The character, materiality, number of the violations and their proximity to the objecting residents are all factors to be considered in determining if a restriction has been abandoned by acquiescence. *980 Harrison, supra. Insubstantial, technical or infrequent violations of a restriction, which are not subversive to the general plan or scheme, weigh little towards establishing an abandonment. Id. Further, in order to find that abandonment in a subdivision has occurred, the property owner against whom abandonment is asserted must have known of the alleged violations or have had a duty to know. Schwab v. Kelton, 405 So.2d 1239 (La.App. 1st Cir.1981), writ denied, 407 So.2d 749 (La.1981).
The intended general development plan in the instant case was that of a residential subdivision. Two of Parker's alleged violations of the building restriction in the subdivision are not violations at all. It is not a violation of the building restriction to have a mobile home on a lot owner's property if that is the owner's residence and the only residence on that property. Further, the issue of mobile homes and mobile home parks in surrounding neighborhoods is irrelevant. The only possible technical violation of the building restriction is that of the lot owner who Parker alleges is operating a commercial welding service. Parker has not shown that Plaintiffs even knew of this alleged welding service and has not submitted any other evidence to show that there are any other violations of the building restrictions occurring in the subdivision. As Louisiana law sets forth, one technical violation of the restriction is not enough to establish that the building restriction, which is enforceable against everyone living in the subdivision, has been abandoned. We find that the building restriction has not been abandoned and summary judgment is appropriate; and, therefore, Parker's third assignment of error is without merit.

Residential or Commercial Use of Property
Parker contends that the mobile homes on her lots are residential and not commercial; and, therefore, they do not violate the building restriction. We do not agree.
The building restriction provides that the use of the property should be for residential purposes only and that only one residence may exist on each property. Parker cites both Vienna Bend Subdivision Homeowners Association v. Manning, 459 So.2d 1345 (La.App. 3d Cir. 1984), and Concord Estates Homeowners Association, Inc. v. Special Children's Foundation, Inc., 459 So.2d 1242 (La.App. 1st Cir.1984), in support of her argument that she is not violating the building restriction. We find that those cases are inapplicable to the case sub judice. Both of those cases dealt with homes for mentally challenged individuals operated by nonprofit corporations in subdivisions that contained restrictions similar to the restriction in this case. The courts in both cases found that the use of those homes was not for commercial activity. The use of both those homes was through nonprofit corporations.
In contrast, in the instant case, Parker rented mobile home slots for profit. Parker has already rented four mobile homes slots and has ten total available mobile home slots open to rent on Lot 10. This is a commercial use of the property and it violates the building restriction not only because it is a commercial use, but also because more than one residence exists on the property. Parker is in violation of the building restriction; and, consequently, her last assignment of error is without merit. Finally, since we find that the restriction in the deed to Parker's lots is a building restriction that is enforceable and has not been abandoned, we pretermit discussion of Parker's assignment of error concerning predial servitudes.

*981 CONCLUSION
For the foregoing reasons, the judgment of the trial court granting Plaintiffs' Robert and Collene Chambless, Jerry and Marilyn Moses and Hollis Faulk, motion for summary judgment and denial of Defendant Sheila Parker's ("Parker") motion for summary judgment is affirmed. Costs of this appeal are assessed to Sheila Parker.
AFFIRMED.
NOTES
[1] Parker calls this restriction the "Frost Language," since Mr. Benton Frost was the original owner of all lots in the Frost Estates and placed this restriction in most of the deeds to the lots in this subdivision.
[2] La. C.C. art. 779 provides:

Building restrictions may be enforced by mandatory and prohibitory injunctions without regard to the limitations of Article 3601 of the Code of Civil Procedure.
[3] La. C.C. art. 777 provides, in pertinent part:

Building restrictions are incorporeal immovables and real rights likened to predial servitudes.