STEPHENS, J.
*616 Defendant, Lake Bruin Landing and Marina, L.L.C., appeals a judgment by the Sixth Judicial District Court, Parish of Tensas, State of Louisiana, finding it was in violation of valid building restrictions imposed on its property and granting injunctive relief sought by Plaintiff, George Bagley, Jr., as trustee of the Michele Bagley Trust and the Lydia Bagley Trust. For the following reasons, we affirm.
FACTS
In September of 2014, Lake Bruin Landing and Marina, L.L.C. ("the LLC"), whose sole member and manager is Ernest A. Gonzalez,[1] purchased Lot 3 of the Bagley Sunnyside Plantation Subdivision No. 2 located on Lake Bruin in Tensas Parish. Building restrictions were imposed on the property in 1974 when Barbara and George Bagley created the subdivision, consisting of three lots, and subsequently sold the lots to their children in three separate deeds: Lot 1 to Lydia Bagley, Lot 2 to Michele Bagley, and Lot 3 to George Bagley, Jr. Each deed imposed identical building restrictions on the vendees and his or her respective heirs, successors, and assigns. In 1998, those lots were transferred, respectively, to the Lydia Bagley Trust, the Michele Bagley Trust, and the George Bagley, Jr. Trust, with George Bagley, Jr. serving as trustee of all three trusts. In 2010, Lot 3 was foreclosed on and sold at a sheriff's sale, but George Bagley, Jr. ("Bagley") remained the trustee of the other two trusts, which currently still own Lots 1 and 2.
The restrictions imposed in the 1974 deeds to the Bagley children read as follows:
a. Neither the purchaser, his successors, lessees, or assigns, shall ever use or permit to be used any house, houses or structures erected or to be erected on said property hereinabove described, either directly or indirectly, for any commercial purpose, trade or business of any form, or for any other purpose other than that of a private residence, or private clubhouse or servants' quarter.
b. Only one main residence building may be erected on the hereinabove described property, provided that this restriction shall not apply to servants' quarters, boathouses, pier houses, storage sheds, garages, pump houses, or similar structures appurtenant to the main residence building; no temporary structures or trailers shall be used on said property at any time as a residence or camp, either temporarily or permanently, provided only that his restriction shall not apply to temporary guests or visitors who are not the owners or lessees of said property.
c. The residence to be constructed on said property shall be constructed of *617 new materials, old brick exterior excluded, and construction shall be sufficient and adequate to meet all F.H.A. specifications and shall be not less than 1,600 square feet of living space, at ground level, excluding porches, patios, garage, or carport.
The LLC purchased Lot 3 with the intent to develop the property into three smaller lots with three custom-built cabins and three boathouses/piers. Gonzalez was unaware at the time of the purchase of any building restrictions on the property that would prohibit that development.[2] He did not become aware of the building restrictions until April of 2015, when he received a letter from the attorney of adjacent lot owner, the Michele Bagley Trust, communicating that Lot 3 was subject to building restrictions and that violations of those restrictions had become apparent. By the time the LLC was informed of the restrictions, it had hired a surveyor to prepare a plat, "Division of Lot 3 of Bagley Sunnyside Plantation No. 2," and commenced development of the property and construction of the cabins and boathouses/piers. The cabins were to measure approximately 1,120 heated square feet. On May 30, 2015, Bagley, as trustee of the owners of Lots 1 and 2, the Lydia Bagley Trust and Michele Bagley Trust, respectively, filed suit against the LLC seeking a permanent injunction enjoining and prohibiting the LLC from the following:
1. subdividing Lot 3 of the subdivision;
2. marketing subdivided lots as residential lots;
3. constructing more than one permanent residence on Lot 3;
4. constructing a permanent residence that fails to meet all F.H.A. specifications and which is less than 1,600 square feet of living space, at ground level, excluding porches, patios, garage, or carport; and,
5. placing temporary structures or trailers on Lot 3, or using same in any commercial enterprise.
In its answer, the LLC asserted that the restrictions were not valid and enforceable because they were ambiguous and had been waived or abandoned. The LLC voluntarily terminated its development of Lot 3 pending litigation and filed a reconventional demand for the financial damages it incurred by halting its project, asserting that Bagley was negligent in filing suit to enforce building restrictions that were not valid.[3]
Trial commenced on January 27, 2017. Evidence at trial established that while owning Lot 3, Bagley permitted three or four of his friends to place camper trailers on the lot during three or four summers from approximately Memorial Day to Labor Day, and Bagley did not charge them any rent for this use. At some time during those periods, Bagley's friends buried Romex cable to run from an existing pole and attached electrical outlets to provide power to their camper trailers. They also installed one or two septic tanks and ran PVC pipe from a nearby tap for water. Additionally, they built two patios, one of poured concrete and one of concrete pavers. Following trial and multiple post-trial memorandums submitted by both parties, *618 the trial court took the matter under advisement. It ultimately ruled in favor of Bagley, rejecting and dismissing the LLC's reconventional demand, and issuing a thorough judgment. The trial court found the building restrictions were valid and enforceable and the LLC's development of Lot 3 was in violation of the restrictions. This appeal by the LLC ensued.
DISCUSSION
Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses and improvements. La. C.C. art. 775. Such restrictions are real rights running with the land and may be enforced by mandatory and prohibitory injunctions. La. C.C. art. 779. Once a building restriction has been properly imposed and recorded, the restrictions run with the land, even if they are later omitted in subsequent deeds. Chambless v. Parker , 38,276 (La. App. 2d Cir. 3/3/04), 867 So.2d 974. In a subdivision subject to building restrictions, each landowner has procedural standing to enforce the building restrictions. Harrison v. Myers , 25,902 (La. App. 2d Cir. 6/22/94), 639 So.2d 402.
In its first assignment of error, the LLC asserts that the trial court erred by concluding the building restrictions were not ambiguous. Doubt as to the existence, validity or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. La. C.C. 783. While building restrictions are to be strictly construed, the intent of building restrictions must be ascertained according to the words contained in the document, their usual meaning, and with consideration of the context of the document as a whole. N. Desoto Estates, L.L.C. v. Johnson , 44,760 (La. App. 2d Cir. 10/14/09), 21 So.3d 1068, 1070. Ambiguity and doubt as to the intent of the creator of the building restriction exist when the restrictions are susceptible to more than one reasonable interpretation. In which circumstances, the interpretation that least restricts the property should apply. Id. Documents establishing building restrictions are further subject to the general rules of interpreting contracts, and whether or not a contract is ambiguous is a question of law. Jackson Square Towne House Home Ass'n, Inc. v. Hannigan , 38,239 (La. App. 2d Cir. 3/3/04), 867 So.2d 960 ; Lawrence v. Terral Seed, Inc. , 35,019 (La. App. 2d Cir. 9/26/01), 796 So.2d 115, writ denied , 2001-3134 (La. 2/1/02), 808 So.2d 341.
Bagley asserts that the restrictions are inherently contradictory, ambiguous, and unclear and should, therefore, be deemed invalid and unenforceable. He particularly takes issue with the exceptions provided for "temporary guests" and certain "structures appurtenant to the main residence building," claiming it is impossible to ascertain what is and is not permitted by the restrictions. The trial court, however, found that the building restrictions imposed on the subdivision are clear and unambiguous and that there is only one reasonable interpretation of the author's intent. The court summarized the restrictions as follows:
The restrictions address three main areas: 1) they prohibit commercial activity; 2) they limit each lot to a single residence of minimum size compliant with building specifications; 3) they prohibit use of "temporary structures or trailers" as residences or camps, subject to the right of a lot owner to permit his temporary guests, who are not lessees, to camp upon a lot and to place a trailer on the lot temporarily.
After a plain reading of the restrictions and a review of the record, we find that the plain meaning of the words used and *619 the context of their use clearly convey the intent of the author of the restrictions. Furthermore, we find there is no other reasonable interpretation of the restrictions than that which was ascertained by the trial court; there could be no other meaning given. Therefore, we do not find that the trial court abused its discretion in concluding that the restrictions were not ambiguous. This assignment of error is without merit.
In its second assignment of error, the LLC asserts that the trial court erred by determining the restrictions had not been waived or abandoned by Bagley, freeing Lot 3 in whole or in part of the restrictions. We disagree.
Once a plaintiff seeking an injunction has established a violation of a restriction, the burden shifts to the defendant to prove a termination or abandonment of that restriction. Harrison, supra. Building restrictions terminate by abandonment of the whole plan or by a general abandonment of a particular restriction. When the entire plan is abandoned the affected area is freed of all restrictions; when a particular restriction is abandoned, the affected area is freed of that restriction only. La. C.C. art. 782. When violations occur without protest to the extent that the general plan is substantially defeated, the violated restrictions are considered waived and are thus unenforceable. Harrison, supra. Whether a restriction has been waived by common consent or universal acquiescence depends upon the facts of each case and the character, materiality, number of the violations and their proximity to the objecting residents. Id. Insubstantial, technical or infrequent violations of a restriction, which are not subversive to the general plan or scheme, weigh little toward establishing an abandonment. Id.
The trial court's factual finding with regard to whether or not certain conduct violates the building restrictions is subject to manifest error review. Jackson Square Towne House Home Ass'n, Inc., supra . In order to reverse a trial court's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Cosby v. Holcomb Trucking, Inc., 2005-0470 (La. 9/6/06), 942 So.2d 471. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
Central to the LLC's argument of waiver or abandonment is Bagley's friends' use of Lot 3 and the ultimate determination of what constitutes a "temporary guest" or "visitor." The LLC contends that Bagley's friends' use of the property not only violated the restrictions but was also subversive to the general plan for the subdivision as a whole. The LLC further asserts that Bagley's knowledge of these violations and failure to object amounts to waiver of the restrictions. Over the span of time that Bagley's friends parked their camper trailers on Lot 3, they did bury electric cords, septic tanks, and PVC water lines and constructed concrete and paver patios. The LLC argues that each of these items violates the restrictions because they are "structures" that are not appurtenant to a main residence building. The trial court, however, found that the installation of these items was "minor and insubstantial" and did not constitute abandonment of the restrictions.
We agree that the installed electric lines, water lines, and paver patio are dissimilar to the structures specifically prohibited unless appurtenant to the main *620 residence building, i.e. , "servants' quarters, boathouses, pier houses, storage sheds, garages, [and] pump houses." While these installations were left behind by Bagley's friends and remained on the property at the time of the LLC's purchase, they, unlike the items listed in the restrictions, are neither the type nor quality of permanent structures that would be installed to service a permanent main residence. The septic tanks and concrete patio, which measured approximately 12 x 20 feet and 3½ inches deep, however, are of more a permanent nature than the other items installed. We do note, although, that the patio was removed by the LLC following its purchase of the property. Likewise, while the septic tanks and concrete patio could conceivably be the type of nonappurtenant structures the restrictions intended to prohibit, we do not find that the trial court was manifestly erroneous or clearly wrong by characterizing them as "minor and insubstantial."
There is no doubt that the camper trailers used by Bagley's friends on Lot 3 are likely the sort of "temporary structure or trailer" that the restrictions prohibited being used on the property as a "residence or camp, either temporarily or permanently." However, the restrictions carved out an exception to this particular provision, allowing such use by "temporary guests or visitors who are not the owners or lessees of the said property." While there was no evidence admitted to indicate Bagley's friends were lessees of the property, and they of course were not owners, the LLC asserts their use of the property was not consistent with that of "temporary guests or visitors." The LLC argues that Bagley's friends occupied Lot 3 freely, unaccompanied by Bagley, and utilized the property as owners rather than guests or visitors. They invested time and money in maintaining the property and altering it to suit their needs, i.e. , the installations discussed herein.
The trial court, however, concluded that Bagley's friends made discontinuous and sporadic use of Lot 3 and their placement of camper trailers on the property was temporary. This determination by the trial court is supported by testimony that Bagley's friends each had their own residences and that they only used the campers at Lot 3 on weekends and holidays during the summer months. We do not find that the trial court erred in determining that the "temporary guests or visitors" exception applies to Bagley's friends and that their use of Lot 3, therefore, did not violate the restrictions. The trial court also concluded that neither the restrictions prohibiting commercial activity nor regulating the size and specifications of the primary residence had been violated prior to the LLC's purchase of Lot 3. Therefore, we find that the trial court was not manifestly erroneous or clearly wrong in finding that since the restrictions were never violated, no abandonment or waiver occurred. This assignment of error is without merit.
The LLC asserts in its third assignment of error that the trial court erred by rejecting and dismissing its reconventional demand for damages. Since we find no error by the trial court in finding that the building restrictions are valid and enforceable, we pretermit discussion of this assignment of error.
CONCLUSION
Accordingly, for the foregoing reasons, the trial court's judgment in favor of George Bagley, Jr., as trustee of the Michele Bagley Trust and Lydia Bagley Trust, is affirmed. Costs are assessed to Lake Bruin Landing and Marina, L.L.C.
AFFIRMED.

Gonzalez was originally named as defendant in the suit but was dismissed by joint stipulation prior to trial.

The LLC filed a third party demand for damages and indemnification against its title attorney and his law firm for their failure to discover and disclose the building restrictions. The claim was settled prior to trial and the third party demand dismissed with prejudice.

Bagley filed a special motion to strike and exception of no cause of action in response to the LLC's reconventional demand that were denied by the trial court.